437 So.2d 448 (1983)
MISSISSIPPI PUBLIC SERVICE COMMISSION
v.
COAST WATERWORKS, INC.
No. 53891.
Supreme Court of Mississippi.
September 14, 1983.
*449 Billy F. Brown, John G. McDonnell, Brown & McDonnell, Biloxi, for appellant.
Hassell H. Whitworth, Watkins & Eager, Jackson, Owen T. Palmer, Jr., Palmer & Gaines, Gulfport, for appellee.
Before WALKER, ROY NOBLE LEE and HAWKINS, JJ.
WALKER, Presiding Justice, for the court:
This is an appeal from the Chancery Court of the Second Judicial District of Harrison County, wherein the chancellor vacated an order of the Mississippi Public Service Commission denying a rate increase to the appellee.
Coast Waterworks, Inc. (hereinafter Coast) provides water and sewage services to residents of Harrison and Jackson Counties. On June 3, 1980, Coast filed with the Mississippi Public Service Commission (hereinafter PSC or Commission) separate applications to adjust its water and sewer rates. Attached to the applications were a balance sheet for the year ending December 31, 1979 and a proforma operating statement.[1]
Coast received its last rate increase on July 1, 1977. Since that time, the appellee argues that the cost of providing these services has increased due to inflation, government regulations, and needed improvements in the plant. In order to secure a reasonable rate of return, Coast sought to raise its residential water rates from $8.00 to $10.00 per month and its residential sewer rates from $10.00 to $15.00 per month. An increase in commercial and industrial rates was also requested.
On Friday, September 19, 1980 Coast filed a revised proforma operating statement showing expenses of $68,609.00 in excess of those shown in the proforma statement previously submitted. Part of the reason for this revised statement was that Coast determined only the day before the revised proforma was filed that one of its wells contained manganese. In order to rid the water of this element a treatment plant *450 costing approximately $50,000.00 would have to be constructed. This plant would also necessitate additional operating expenses.
The Public Service Commission set hearing dates of September 22-23, 1980 for both the water and sewer applications. Prior to the hearing Coast made a motion to consolidate the cases. This motion was denied by the Commission and the application for an increase in water rates was heard on September 22-23, 1980. It was followed on September 23 by the hearing on the application for an increase in sewer rates.
On October 7, 1980, the Public Service Commission entered an order denying all of the proposed water increase. On that same date it entered an order allowing an increase of only $2.00 for residential sewage service and $4.00 for commercial sewage service. Thereafter Coast filed a petition for rehearing. When the Commission failed to act on the petition within twenty days, it was deemed refused under Mississippi Code Annotated section 77-3-65 (1972).
Coast then perfected an appeal to the Chancery Court for the Second Judicial District of Harrison County. Coast also petitioned the court for an order staying enforcement of the Commission's order. With its petition it filed supersedeas and refund bonds. On October 30, 1980 the chancellor granted the petition and allowed Coast to implement the proposed rates subject to refund with interest of any amount determined to be excessive. On December 15, 1981 the chancellor issued an opinion[2] and decree vacating the orders of the PSC and returning the cases to the Commission for determination of a rate that would allow Coast a reasonable return on its investment. It is from this order that the PSC appeals. Several issues are presented, each of which will be discussed separately.

I.

WAS IT ERROR FOR THE COURT NOT TO CONSOLIDATE THE CASES?
The Mississippi Public Service Commission is vested with broad discretion in determining how applications for rate increases are to be heard. We cannot say that the Commission abused that discretion when it refused to consolidate the water and sewer application of the appellee. Therefore, no error was committed in this regard. It appears, however, that a consolidation would facilitate a better understanding of the highly integrated water and sewer operations of Coast Waterworks, Inc.
The decree of the chancery court is therefore affirmed in this regard.

II.

WAS IT ERROR NOT TO ALLOW INTO EVIDENCE COAST'S REVISED PROFORMA SUBMITTED ON SEPTEMBER 19, 1980, THREE DAYS BEFORE

THE HEARING?
A utility is required to submit a proforma operating statement with its application for a rate increase. Amendments to the proforma, except to correct errors, are allowed at the discretion of the PSC. The Commission refused to admit the revised proforma filed by the appellee in both the water and sewer cases.
During the hearing on the water application, evidence established that only after Coast filed the first proforma operating statement did it learn that a water treatment plant would have to be constructed at one of its wells. The plant was needed to cleanse the water of certain elements that originate in the earth's strata from which the water is drawn. It is evident that the lateness of the revised proforma was neither intentional nor due to the neglect of Coast. Therefore, it should have been admitted into evidence and considered to the extent that the Commission might find it relevant to the water application.
In the sewer case, however, Coast acquired no new information which would justify the lateness of the revised proforma. For this reason, the Commission properly exercised its discretion in not allowing the *451 revised proforma to be considered with the sewer application.
The decree of the chancery court on this point is therefore affirmed in both the water and sewer cases.

III.

MUST A TYPICAL TEST YEAR, BASED UPON EXPERIENCE, BE USED TO ESTABLISH THE RATE BASE AND RATE OF RETURN?
The Commission (appellant) contends that it properly based its order upon a typical test year. While the use of a projected test year is permissible, the utility must meet its burden of showing by substantial evidence that the test year adopted for use in calculating the rate base and rate of return is reasonable and better suited for such determination than all other alternatives. Mississippi Power & Light, et al. v. Mississippi Public Service Commission, 435 So.2d 608 (Miss. 1983).
In the Commission's brief it is stated that "in determining the rate base and rate of return, the Commission's calculations were based on the figures for the test year ending December 31, 1979, without any projected rate of return for the proforma period." This was error without taking into consideration any increased expenses caused by inflation or otherwise. When operational expenses increase and such increases are properly substantiated, then it is error for the Commission not to take the increases into consideration. According to the Commission's own brief that was not done in this case.

IV.

IS WORK-IN-PROGRESS PROPERLY INCLUDED IN THE RATE BASE?
The appellee contends that the cost of the new water treatment plant, along with the cost of other repairs and improvements, should be included in the rate base. Bobby Berry, an engineer for Coast, testified as to the cost of these repairs and improvements and the time needed to complete them.
In Mississippi Power & Light, et al. v. Mississippi Public Service Commission, supra, the Commission properly excluded work-in-progress. However, in that case there was no evidence as to when the additions were to be placed in service. The Court clearly indicated, however, that if there had been such proof, the work-in-progress could be used as part of the test year rate base to the extent that it would be "used or useful" during the test year. The Court stated that:
We are of the opinion the Commission did not err in excluding CWIP from the proposed rate base. As MP & L contends it would lower future rate base depreciation and tax costs which would benefit future customers as opposed to existing customers. It must also be noted that although MP & L presented evidence as to what percentage of the CWIP would be "used or useful" during the test year, they did not show what percentage would be used or useful during any given time during the test year. Therefore, the Commission found the inclusion of these projects would not reflect the actual expenditures, and it appears to us this was correct. Had MP & L proven what percentage would go "on-line" during what particular months of the year, and made the appropriate adjustments, the Commission's order seems to indicate this amount could properly have been included. We are of the opinion that since MP & L did not meet its burden of proof concerning this issue, the Commission was correct in denying its inclusion in the rate base.
(435 So.2d at p. 626).
It is evident from the testimony that the proposed repairs and improvements would be operational during the test year. Therefore, these items would properly be included in the rate base to the extent of their usefulness in the test year.

V.

IS DEPRECIATION ON CONTRIBUTIONS IN AID OF CONSTRUCTION AN ALLOWABLE OPERATING EXPENSE?
It is well settled that contributions in aid of construction may not be included *452 in the utility's rate base. See Southern Bell Telephone & Telegraph Company v. Mississippi Public Service Commission, 237 Miss. 157, 113 So.2d 622 (1959) and Mississippi Public Service Commission v. Hinds County Water Company and Dixie Water Company, 195 So.2d 71 (Miss. 1967).
Coast contends, however, the depreciation on contributed property should be allowed as an operating expense. The chancellor, relying upon Mississippi Public Service Commission v. Hinds County Water Company and Dixie Water Company, supra, held that the Public Service Commission erred in not allowing the depreciation expense on contributed property as a deduction from the net utility income. However, the issue of depreciation on contributed property was not before the Court in the Hinds County Water Company case and it does not support the contention that such an expense should be allowed.
The Commission properly excluded the annual depreciation on contributions in aid of construction. To permit such a deduction would allow the utility to recover the cost of property for which it had invested nothing. Accordingly, the chancellor's decision on this question is reversed.

VI.

ARE LEGAL AND ACCOUNTING FEES INCURRED IN PREPARATION FOR THE RATE HEARING ALLOWABLE EXPENSES?
The Commission contends that legal and accounting expenses incurred in preparing for the rate case are abnormal, non-recurring expenditures and, therefore, should be disallowed. While these expenses are not annual ones, they are expected by any utility subject to regulation by the Public Service Commission. The legitimacy of such expenses, when reasonable, is well recognized. See 1 A. Priest, Principles of Public Utility Regulations 67-69 (1969). However, since utilities normally do not apply for an increase each year, the total cost for preparing for the rate case should not be allowed in the test year. Instead, the cost should be amortized over a number of years reasonably representing the period, as shown by experience, between applications for a rate increase.
For the reasons stated above the decree of the chancery court is affirmed in part, reversed in part, and this cause remanded to the Public Service Commission for further hearings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED TO THE PUBLIC SERVICE COMMISSION FOR FURTHER HEARINGS CONSISTENT WITH THIS OPINION.
PATTERSON, C.J., BROOM, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
DAN M. LEE, J., concurs in result only.

APPENDIX "A"

OPINION
This is an appeal of the Coast Waterworks, Inc. from the Order of the Mississippi Public Service Commission dated October 7, 1980, denying the appellant any increase in its water rates and also the Order of the Mississippi Public Service Commission dated October 7, 1980, granting the appellant a $2 per month rate increase to residential customers and a $4 per month rate increase for commercial customers in their sewerage rates. Appellant had filed a notice of increase with the commission on its water rates of $2 per month from a flat rate of $8 per month, on its residential sewer rates for an increase of $5 per month from a flat rate of $10 per month, plus other small increases in the commercial and industrial sewer rates.
Although the water and sewer applications were heard separately before the commission, they were combined for the purposes of appeal.
The appellant has assigned numerous errors in the two cases now before the Court. *453 Of those assigned, the most specific ones are as follows:
1. The commission erred in both orders with respect to its findings that the annual depreciation expenses on contributed facilities should be disallowed.
2. The commission erred in its refusal to admit the revised pro forma operating statements into evidence and thereby failed and refused to base its findings of fact on the undisputed evidence reflected by the most up-to-date financial data.
3. That the commission erred in overruling Appellant's motion to consolidate the two cases for all purposes.
4. And finally, the commission's orders are not supported by any evidence, is contrary to the overwhelming weight of the evidence, and is the result of the commission's failure to follow the testimony in the case. While there were other errors assigned, the Court feels that those stated are the most applicable to this appeal.
The Court is of the opinion that the Supreme Court of this State in the case of Mississippi Public Service Commission vs. Hinds County Water Company and Dixie Water Company, 195 So.2d, 71, clearly holds that annual depreciation expenses on contributed facilities are an allowable deduction from the net utility income. This Court is therefore of the opinion that the commission erred in not allowing those deductions.
In considering whether the commission erred in its refusal to admit the revised pro forma operating statements into evidence, the Court notes that a very large portion, if not the majority, of the evidence in Cause No. 10,433 related to the "red water problem" at the Pecan Park Water System. The evidence further reflects that this is the primary basis for the revised pro forma. The record further reflects that the information contained in the revised pro forma concerning the treatment of the water at Pecan Park was available to the utility only the day before the revised pro forma was filed with the commission. The Court feels therefore that the failure to admit the revised pro forma in Cause No. 10,433 was error. The revised pro forma operating statements in the sewerage rate increase was not based upon information that came to the utility's attention immediately prior to hearing and therefore the Court is of the opinion that it was not error to refuse to admit the revised pro forma operating statements in Cause No. 10,434.
The Court, in considering the error assigned based on the refusal of the commission to consolidate the water and sewerage cases for all purposes, is aware that this is a discretionary function with the commission and therefore, in the absence of a showing of abuse of discretion, this Court will uphold the commission's decision to not consolidate the bases. The Court is of the opinion, however, that the consolidation of the cases would have been more fair and a more economical method of handling the matters. It is difficult to give a fair picture of the total operation of the company without this combination.
The utilities filed an assignment of error complaining that the commission's orders were not supported by any evidence and therefore were contrary to the overwhelming weight of the evidence and is a result of the commission's failure to follow the testimony in the case. The Court, in reviewing the record of these two hearings, finds that the commission's only witness, Mr. Browning, made numerous errors in the calculations of the rate bases that were presented to the commission. These errors were brought out on cross-examination and many of them were admitted by Mr. Browning. Apparently the commission, in its orders, sought to rectify some of these errors. Other corrections were not apparent in the orders. While it may be a correct calculation, this Court is unable to determine, for instance, why Income Taxes were deducted in the commission's ruling in Cause No. 10,434 and not in Cause No. 10,433. Although this Court has searched long and hard, it has been unable to determine where *454 the tax figure of $10,916, deducted from the utility income in Cause No. 10,434, originated. The Court cannot find this figure mentioned anywhere in the record. The Court therefore feels that the commission's orders were, at least in part, not supported by any evidence.
The Court therefore is of the opinion that both of the cases involved herein must be returned to the commission for further action so as to allow the utility a reasonable rate of return based upon the ruling of this Court.
This the 15th day of December, 1981.
NOTES
[1] A proforma balance sheet is one "containing imaginary accounts or figures for illustrative purposes." Webster's Third New International Dictionary 1812 (1971).

The Commission rules require a utility seeking to adjusts its rates to file along with its application:
"(3) A balance sheet of the utility prepared as of the last day of the latest month in which data shall be readily available.
(5) A pro forma operating statement in the same form as the actual for the same period giving effect to the proposed changes in rates and adjusted for known changes in cost of operation.
(6) A pro forma operating statement in form as the actual showing estimate of revenue and expenses for the twelve (12) month period beginning with effective date of the changed rates (a) without giving effect to the changed rates and (b) giving effect to the changed rates." (Rule 7 of the Utility Rules of Practice and Procedure issued by the Mississippi Public Service Commission).
[2] See Appendix "A".