# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CC-01367-SCT

*MISSISSIPPI PUBLIC SERVICE COMMISSION*

*v.*

*DIXIE LAND AND WATER COMPANY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/18/96 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM BRUCE MCKINLEY |
| ATTORNEY FOR APPELLEE: | DENNIS WAYNE MILLER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 2/5/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/18/98 |

**BEFORE SULLIVAN , P.J., BANKS AND MILLS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The appeal before this Court arises from the November 8, 1996, Order of the Lowndes County Chancery Court on appeal, which reversed the order by the Mississippi Public Service Commission (hereafter MPSC) and directed the MPSC to allow the Company's water rate increase of $22,703 annually and the Company's sewer rate increase of $18,783 annually. The chancery court based its decision on its finding that the order by the MPSC was arbitrary, not supported by substantial evidence, and contrary to the manifest weight of the evidence. The Chancellor found that the only substantial evidence before the Commission was the testimony of Dixie Land's witnesses. We agree with the chancellor that the order by the MPSC denying the rate increase for the water service and delaying the full imposition of the sewer rates was not supported by substantial evidence, and we therefore affirm that part of the decision. However, with respect to the chancellor's attempt to set the rate increase, this Court reverses that part of the order and remands the case back for further consideration.

¶2. Dixie Land is a Mississippi for-profit public utility corporation engaged in the provision of water and sewer service to the public for compensation in Lowndes County, Mississippi. As required by the Mississippi Legislature, the MPSC has the duty of regulating public utilities and setting utility rates charged by these companies. On November 29, 1995, Dixie Land filed two petitions with the MPSC,

one seeking a rate increase for the provision of water service, and the other seeking a rate increase for the provision of sewer services. In accordance with section 77-3-39 of the Mississippi Code of 1972 a special meeting was held on December 14, 1995, where the MPSC ordered the suspension of both of the proposed rate increases, up to 120 days from the date of filing, and requested a full investigation to be made by the Public Utilities Staff.

¶3. The Public Utilities Staff (hereafter PUS) is a separate and independent group created by legislation to investigate and advise the MPSC. Miss. Code Ann. § 77-2-1 (1991). It has authority to review rate proposals by a public utility when it deems it to be necessary. Miss. Code Ann. § 77-2-9 (3)(m) (1991). It should be made clear that although the PUS may aid the MPSC in determining issues presented before the commission, the PUS is not controlled by the MPSC. The PUS chose not to intervene or advise the MPSC regarding the proposed rate increases.

¶4. Commissioner Robinson held a hearing on February 2, 1996, where several customers of Dixie Land gave extensive testimony regarding discoloration of the water and overall displeasure with the quality of their water service. The only other witnesses that testified were those on behalf of Dixie Land. As a result of the hearing, Commissioner Robinson issued separate Recommended Orders regarding the water and sewer rate increases on April 23, 1996. On May 8, 1996, final orders were issued by the entire Commission fully adopting the recommendations of Commissioner Robinson. Dixie Land appealed the MPSC orders to the Chancery Court of Lowndes County which resulted in reversal by the Chancellor. The MSPC has appealed this reversal order to this Court.

## STATEMENT OF THE LAW

### I.

**DOES THE CHANCERY COURT HAVE THE AUTHORITY TO DIRECT THE MISSISSIPPI PUBLIC SERVICE COMMISSION TO ALLOW DIXIE LAND AND WATER COMPANY, INC., A WATER RATE INCREASE IN THE ANNUAL AMOUNT OF $22,703 AND SEWER RATE INCREASE IN THE ANNUAL AMOUNT OF $18,783?**

¶5. The MPSC argues that the Chancery Court lacked the authority to set the levels of rates to be fixed by the Commission. This Court stated, "It is beyond question that the function of rate making in this state is purely legislative in character and a court is without power to fix rates charged by a public utility. We firmly have established this rule in a number of cases." *Mississippi Pub. Serv. Comm'n v. South Cent. Bell Tel. Co.*, 464 So. 2d 1133, 1135 (Miss. 1984); *Mississippi Pub. Serv. Comm'n v. Hinds County Water Co.*, 195 So. 2d 71 (Miss. 1967); *United Gas Corp. v. Mississippi Pub. Serv. Comm'n.*, 240 Miss. 405, 127 So. 2d 404 (1961). Since the rate making authority rests entirely with the MPSC this Court reversed the lower court when it fixed a rate base and rate of return even though it affirmed the part of the order that stated that the commission's order was not supported by substantial evidence. *Mississippi Pub. Serv. Comm'n v. Hughes Tel. Co.*, 376 So. 2d 1074, 1079 (Miss. 1979). Here, the chancellor's order in this matter reads in part as follows:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Commission Orders denying Dixie Land's proposed water rate increase and granting an increase for the sewer system over a two year period are set aside. The cases are remanded to the Commission and it is directed to allow Dixie Land a water rate increase in the annual amount of $22,703 and a

sewer rate increase in the annual amount of $18,783 on or before July 1, 1996.

The MPSC places great emphasis on the word "directed" as being an effort by the chancery court to actually set the increase. On the other hand, Dixie Land contends that the evidence in the record is uncontradicted by the MPSC and anything less than the specified numbers requested has been shown to be confiscatory. Therefore, it is Dixie Land's contention that the chancellor merely directed the MPSC to do its job in approving the proven and justified rate increase.

¶6. In *Mississippi Pub. Serv. Comm'n v. Hinds County Water Co*., this Court determined that the chancellor, by stating that the minimum monthly rate should be near the figure of $4 per month, was not attempting "to fix the rate, but he was merely giving his impression as to what a reasonable rate would be after adjustments he thought necessary were made." *Hinds County Water Co.*, 195 So. 2d at 78. In contrast, this Court reversed the lower court when it adopted the proposed rate increase of the power company. *Mississippi Pub. Serv. Comm'n v. Mississippi Power Co.*, 337 So. 2d 936, 941 (Miss. 1976). In support of that decision this Court, in reviewing Mississippi Code Annotated of 1972 section 77-3-67 (4), stated:

> As we view this language, it means that the court in addition to sustaining or dismissing an appeal may also, when the order is wholly or partially vacated, remand the matter to the commission for further proceedings not inconsistent with the court's order. The discretion mentioned in the statute does not authorize removal of the rate making power from the commission where it is embedded by Mississippi Code Annotated section 77-3-41 (1972). The numerous references to the commission's rate making power in the statutes, both precedent and antecedent to Section 77-3-41, buttress our thoughts that the legislature clearly intended that the power remain with the commission.

*Mississippi Power Co.,*337 So. 2d at 940.

¶7. Accordingly, we find that the language used by the chancellor in the case *sub judice* is an attempt to set the rate increase in direct contravention of section 77-3-41 of the Mississippi Code of 1972. Therefore, this Court reverses the part of the chancellor's order that attempts to set the rate increase for both the water and sewer service and remands the case back to the commission for further review and consideration.

## II.

## IS THE ORDER RENDERED BY THE MISSISSIPPI PUBLIC SERVICE COMMISSION IN THE WATER RATE INCREASE REQUEST BY DIXIE LAND AND WATER COMPANY, INC., ARBITRARY OR CAPRICIOUS OR IS IT SUPPORTED BY ANY SUBSTANTIAL EVIDENCE?

¶8. The Mississippi Legislature provides the standard of review a chancery court must follow when hearing a case on appeal from a final finding, order or judgment of the MPSC. The relevant section provides:

> (4) The court may hear and dispose of the appeal in termtime or vacation and the court may sustain or dismiss the appeal, modify or vacate the order complained of in whole or in part, as

the case may be. In case the order is wholly or partly vacated the court may also, in its discretion, remand the matter to the commission for such further proceedings, not inconsistent with the court's order as, in the opinion of the court, justice may require. *The order shall not be vacated or set aside either in whole or in part, except for errors of law, unless the court finds that the order of the commission is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the commission, or violates constitutional rights.*

Miss. Code Ann. § 77-3-67 (1991) (emphasis added). "This Court has followed the foregoing legislative mandate and continues to do so in the present case." ***South Cent. Bell Tel. Co.***, 464 So. 2d at 1135; ***Southeast Mississippi Legal Services Corp. v. Mississippi Power Co.***, 605 So. 2d 796, 798 (Miss. 1992). In addition, this Court has explained that an order of the MPSC is presumptively valid. ***State ex rel. Pittman v. Mississippi Pub. Serv. Comm'n***, 538 So. 2d 387, 394 (Miss. 1989). "The reasonableness of public utility rates is not determined by definite rules and legal formulas, but is a fact question requiring the exercise of sound discretion and independent judgment in each case." ***State ex rel. Pittman***, 538 So. 2d at 394 (*citing* ***Mississippi Pub. Serv. Comm'n v. South Cent. Bell Tel.***, 464 So. 2d. 1133, 1134-35 (Miss. 1984)).

¶9. At the hearing two witnesses testified on behalf of Dixie Land in connection to the financial position of the company presently, as well as an estimate of the future status of the company with and without the proposed rate increases. Dixie Land's first witness was E. S. Thomas, Jr., a Certified Public Accountant. He explained the financial status of Dixie Land based on historical data and testified that the income statement of Dixie Land reflected a $10, 378 loss for the six-month period ending June 30, 1995, and a $4,246 loss for the twelve-month period ending June 30, 1995. His testimony was not disputed. The other witness that testified to the financial status of Dixie Land was B. Leon Browning, a CPA who was qualified as an expert in utility rates. Browning explained several exhibits which formed the basis for the need for the proposed rate increases. Browning prepared two pro forma income statements[1], one future estimate for water and one for sewer, for the twelve-month period ending December 31, 1996, based on the historical data. Browning used the first six months of 1995, and the last six months of 1994, as the historical test year. In the pro formas for both the water and sewer he calculated the rate of return at 5.1% which he testified was well below the 10% to 12% overall return of other privately owned water systems. In order to obtain this rate of return the revenue would have to be increased annually to $22,703 for water services and $18,783 for sewer services. These are the exact amounts the Chancellor directed to be allowed in the order reversing and remanding the case to the MPSC. Without the rate increase, the pro forma on the water side shows a negative net income of $18,377 and on the sewer side a negative net income of $18,669. With the proposed rate increase the pro forma shows a net income of $4,326 on the water side and a net income of $114 on the sewer side. Willis Puckett, II, president of Dixie Land, testified that the last rate increase for water was in September of 1988, and the last rate increase for sewer was in September of 1990. His reason for the water rate increase was to enable Dixie Land to make the needed improvements to the system and still make a profit. The justification he gave for the sewer rate increase was that the system is operating in a deficit.

¶10. The MPSC's order required Dixie Land to conduct a feasibility study to address the capital cost, operation and maintenance cost associated with improving the existing water treatment plant. Dixie Land had already done this and the results of the study were before the MPSC at the time of the

decision. Robert L. Calvert, a professional engineer, had prepared an engineering report for Dixie Land recommending both short-term and long-term plans to improve the company's water service. To require another study is unsupported by the evidence, and therefore arbitrary and capricious. However, the order to conduct a study pertaining to the making of a emergency as well as permanent water connection with the City of Columbus was not previously done by Dixie Land and it was not necessarily arbitrary or capricious to order such a study.

¶11. The MPSC denied the water rate increase because it claims that it did not have actual figures to utilize to adjust the rate base and/or expenses of the Company relating to its work on the water system. The MPSC determined that Dixie Land had submitted speculative estimated costs of work to be done on the water system and it was "not in a position to grant a rate increase based on these estimated costs." The chancery court addressed this issue by explaining, "[a]fter reviewing the testimony of Dixie Land and its exhibits, the Court finds that the routine maintenance costs are necessary operating expenses and not part of the rate base."

¶12. The normal practice followed in rate making is "to test rates for the future upon the basis of actual operating experience of a representative period of time and to adjust that experience for changes that appear definite and certain." *Southern Bell Tel. And Telegraph Co v. Mississippi Pub. Serv. Comm'n.*, 237 Miss. 157, 184, 113 So. 2d. 622, 627 (1959). Dixie Land submitted a pro forma operating statement which included the $17,500 expense for the improvements that need to be made to the water system as explained to Commissioner Robinson by Calvert, the engineering expert. This Court has already been confronted with a similar issue when considering the cost of a new water treatment plant, clearly a capital expenditure. *Mississippi Pub. Serv. Comm'n v. Coast Waterworks*, *Inc.*, 437 So. 2d 448 (Miss. 1983). In that case, this Court held that the MPSC was in error for not considering increased expenses and basing its calculations without regard to the projected rate of return for the pro forma period. The Court stated, "When operational expenses increase and such increases are properly substantiated, then it is error for the Commission not to take the increases into consideration." *Coast Waterworks*, *Inc.*, 437 So. 2d at 451. The Court further stated, "[i]t is evident from the testimony that the proposed repairs and improvements would be operational during the test year. Therefore, these items would properly be included in the rate base to the extent of their usefulness in the test year." *Id.* at 451.

¶13. The MPSC did not present any of its own witnesses to address the figures submitted by Dixie Land's accountants and although questioned, none of the testimony or exhibits offered by Dixie Land were disputed as to their accuracy. There was no testimony or results of any investigation done by the Public Utilities Staff on the reasonableness of Dixie Land's proposed rate increases for water or for sewer. If the expenses to be incurred within the next year are not to be properly considered then there would be no need for the requirement of submitting a pro forma income statement. In *Mississippi Pub. Serv. Comm'n v. Mississippi Power Co.*, this Court affirmed the trial court in part because the MPSC failed to consider increased cost of operating expenses, and the increased capital cost of the business. *Mississippi Power Co.*, 337 So. 2d at 939. This Court held, "[w]e therefore affirm the trial court in its finding that the order of the commission was not supported by substantial evidence because it is apparent that the commission overlooked uncontradicted and reasonable testimony of the company's witnesses in reaching its conclusion that the proposed rate increase was not supported by substantial evidence." *Mississippi Power Co.*, 337 So. 2d at 939.

¶14. This Court reaches this same conclusion in the case *sub judice*. There was no contradicted evidence or testimony pertaining to the need for the improvements to the water system. The engineer gave an estimated cost of $17,500 for the improvements and stated the improvements would be a temporary solution and would only be effective for one to two years maximum before the discoloration of the water and poor water quality would return. While the engineering report showed greater needs with higher costs than those being performed, the immediate maintenance was economical and result oriented. Furthermore, Browning, the CPA, stated that the expense was a normal maintenance expense and therefore it expensed off in the current year as opposed to being capitalized over a period of time. It is apparent that Dixie Land, under its current rates, can not afford to make the necessary improvements which should be considered routine maintenance. However, this Court finds that the MPSC's decision to disallow the $1,000 expense to locate the valves that were covered up when the developer poured a driveway over them was not arbitrary or capricious and should not be considered routine maintenance.

¶15. As stated correctly by the chancellor, the burden of proof rests with Dixie Land to establish the reasonableness of its proposed new rates. ***Mississippi Power Co.***, 337 So. 2d at 938; ***Rankin Utility Co., Inc. v. Mississippi Pub. Serv. Comm'n.***, 585 So. 2d 705, 709 (Miss. 1991) . As the MPSC correctly points out, it is granted discretion and flexibility in rate cases. The MPSC is free to accept or reject recommendations of any witness. ***South Cent. Bell Tel. Co.***, 464 So. 2d at 1135. The MPSC is the trier of facts and within this province, it has the right to determine the weight of evidence, the reliability of estimates and the credibility of witnesses. However, this does not mean that it can ignore all evidence presented and arbitrarily deny a rate increase.

¶16. The MPSC places much emphasis on the testimony of customers of Dixie Land about the poor quality service they have and the fact that Dixie Land ignored many of the recommendations made by the Public Utilities Staff in 1992. Calvert was questioned on cross-examination and counsel for the MPSC presented a memo dated September 21, 1992, which contained a list of recommendations for better water service prepared by the PUS. Some of the recommendations have been complied with and others have not, but on re-direct Calvert stated that the memo was only suggested recommendations and was not an order. Dixie Land argues that adequacy of service issues are dealt with separate and apart by the MPSC either upon complaint of a customer or upon its own initiative. The process of rate making was explained by this Court in ***South Hinds Water Co. v. Mississippi Pub. Serv. Comm'n.***, 422 So. 2d 275 (Miss. 1982 ). This Court explained:

> There are three essential elements in the rate making process: First, the necessary operating expenses incurred to produce the utility's products; second, the rate base; and third, the rate of return allowed the utility. F. Welch, Cases and Text on Public Utility Regulation 453-54 (rev. ed. 1968). The rate base is calculated by valuing the property used and useful for public service. Then, a fair and reasonable rate of return is allowed on the value of the property included in the rate base, *plus an allowance for the necessary operating expenses*. In other words, a utility is given revenues in excess of its operating expenses so that it can pay a fair return to its investors and retire its indebtedness.

***South Hinds Water Co.***, 422 So. 2d at 281 (emphasis added). No where in this explanation does the Court address the issue of adequacy of service. The authority for addressing the issue of service for a public utility is found in an unrelated statute of the Mississippi Code of 1972. *See* Miss. Code Ann.

§ 77-3-21 (Supp. 1997). However, this statute specifically states, "Nothing in this paragraph shall be construed to include service for water and sewage." Miss. Code Ann. § 77-3-21 (Supp. 1997). In 1995, the Mississippi Legislature, pursuant to section 77-3-22 of the Mississippi Code Annotated of 1972, provided a way that the MPSC could, upon the finding of inadequate service, petition the chancery court to attach the assets of the privately owned water or sewer utility and place it under the sole control of a receiver. Miss. Code Ann. § 77-3-22 (Supp. 1997). The MPSC seems to be confusing the issue of adequate service with the rate increase issue. Each issue is considered apart from the other and the quality of service being provided should not influence the decision to either grant or deny a rate increase.

¶17. Dixie Land has proven that in order to receive a 5.1% rate of return, in light of the maintenance expenses, that it must be allowed a rate increase. The MPSC must consider these expenses that are normal operating expenses as opposed to capital expenditures in its determination of the reasonableness of the proposed rate increase. There is no other evidence in support of the denial for the water increase other than the fact that the work to be done by Dixie Land has not been commenced or completed. As a result, this Court affirms the lower court's finding that the MPSC's order was not supported by substantial evidence and was contrary to the manifest weight of the evidence and remands the case back to the MPSC for further findings not inconsistent with this opinion. On remand, the Commission should be allowed to condition the rate increase by requiring the recommended maintenance to be completed within a certain time after the effective date of the rate increase.

## III.

### IS THE ORDER RENDERED BY THE MISSISSIPPI PUBLIC SERVICE COMMISSION IN THE SEWER RATE INCREASE REQUEST BY DIXIE LAND AND WATER COMPANY, INC., ARBITRARY OR CAPRICIOUS OR IS IT SUPPORTED BY ANY SUBSTANTIAL EVIDENCE?

¶18. The MPSC allowed the requested sewer rate increase but "to avoid rate shock" it staggered the increase over a period of two years. The MPSC stated in its order, "[t]he approximate 75% rate increase requested by the Company in its Notice of Intent to Change Rates for sewer service might be justified at this time if the Company's position was the Commission's only consideration. However, the Commission also has a duty to protect the Company's ratepayers from rate shock which would be the case should the full rate increase requested by the Company be granted at this time." The chancellor did not address this concern but instead reversed the order as being arbitrary and not supported by any evidence.

¶19. This Court has upheld the right of a public utility to earn a fair return in describing it as "one which, under prudent and economical management, is just and reasonable to both the public and the utility." *Southern Bell Tel. & Telegraph Co.*, 237 Miss. at 241, 113 So. 2d at 656. There seems to be no Mississippi case discussing the term "rate-shock". The MPSC asserts that Dixie Land could have requested appropriate rate relief in the past when necessary, and therefore prudent management was not used. Dixie Land does not address this point but argues that the increase requested was only an additional four dollars per month and the resulting profit to Dixie Land based on this increase is only $114. Dixie Land argues that the MPSC's denial of revenue for one year totaling approximately

$9,390 would cause a negative income and amount to confiscation of the utility's property by the MPSC.

¶20. The Supreme Court of the United States said, " [t]he just compensation safeguarded to the utility by the Fourteenth Amendment is a reasonable return on the value of the property used at the time that it is being used for the public service. And rates not sufficient to yield that return are confiscatory." ***Bd. of Pub. Util. Comm'rs v. New York Tel. Co.***, 271 U.S. 23, 32 (1926) (*citing* ***Willcox v. Consolidated Gas Co.***, 212 U. S. 19, 41; ***Bluefield Co. v. Public Service Commission***, 262 U.S. 679, 692)). The U.S. Supreme Court in a later case explained:

> The guiding principle has been that the Constitution protects utilities from being limited to a charge for their property serving the public which is so "unjust" as to be confiscatory. ***Covington & Lexington Turnpike Road Co. v. Sandford***, 164 U.S. 578, 597 (1896) (A rate is too low if it is "so unjust as to destroy the value of [the] property for all the purposes for which it was acquired," and in so doing "practically deprive[s] the owner of property without due process of law"); ***FPC v. Natural Gas Pipeline Co.***, 315 U.S. 575, 585 (1942) ("By long standing usage in the field of rate regulation, the 'lowest reasonable rate' is one which is not confiscatory in the constitutional sense"); ***FPC v. Texaco Inc.***, 417 U.S. 380, 391-392 (1974) ("All that is protected against, in a constitutional sense, is that the rates fixed by the Commission be higher than a confiscatory level"). If the rate does not afford sufficient compensation, the State has taken the use of utility property without paying just compensation and so violated the Fifth and Fourteenth Amendments.

***Duquesne Light Co. v. Barasch***, 488 U.S. 299, 307-08 (1989).

¶21. Without the rate increase for sewer service the evidence indicates that Dixie Land would have a negative income of $18,669, and with the full rate increase it would only have an income of $114. If the rate increase is phased in over a period of two years with only half of the proposed increase allowed in the first year, then Dixie Land will suffer a negative net income. There does not seem to be any dispute that 5.1% is considered to be a reasonable, if not low, rate of return. This Court finds that the partial rate increase allowed would amount to an unreasonable rate which could be considered confiscatory.

¶22. The MPSC based its decision solely on the "rate shock" to Dixie Land's customers. The flat rate, under the proposed rate change, would increase by four dollars per month. This is not such a drastic increase that Dixie Land should be denied a reasonable rate of return for its investment. Therefore, this Court affirms the chancellor's finding that the MPSC's order was not supported by substantial evidence and it was arbitrary and capricious.

¶23. **AFFIRMED IN PART. REVERSED AND REMANDED IN PART.**

**PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. PRATHER, C.J., NOT PARTICIPATING.**

1. The Mississippi Code of 1972 requires a utility seeking a rate change to file in its application:

(e) A pro forma operating statement in the same form as the actual operating statement showing estimate of revenue and expenses for the twelve-month period beginning with the effective date of the changed rates (i) without giving effect to the changed rates and (ii) giving effect to the changed rates;

(f) A pro forma operating statement in the same form as the actual operating statement for the same period giving effect to the proposed changes in rates and adjusted for known changes in the cost of operations;

Miss. Code Ann. § 77-3-37 (2)(e) & (f)(Supp. 1997).