422 So.2d 275 (1982)
SOUTH HINDS WATER COMPANY
v.
MISSISSIPPI PUBLIC SERVICE COMMISSION.
No. 53447.
Supreme Court of Mississippi.
November 3, 1982.
*276 Young, Scanlon & Sessums, Stephen W. Rimmer, Pat H. Scanlon, Jackson, for appellant.
Scales & Scales, Clarence R. Scales, Bennett E. Smith, Jackson, for appellee.
Before PATTERSON, C.J., and ROY NOBLE LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
South Hinds Water Company filed a petition with the Mississippi Public Service Commission in order to gain a rate increase for water service to its certificated area within Hinds County. The Commission initially approved the changes requested by South Hinds but it subsequently reinstated the case and denied the rate increase. On appeal, the Commission's decision to deny the increase was affirmed by the Chancery Court of the First Judicial District of Hinds County.
The assignments of error raised on South Hinds' appeal are:
*277 (1) That the Commission erred in excluding authorized but unpaid officers' salaries as an operating expense;
(2) That the Commission erred in excluding interest expense on long-term debts and on customers' deposits as operating expenses;
(3) That the Commission erred in failing to include the appellant's four-acre tract of land as a part of the rate base;
(4) That the Commission erred in its calculation of the working capital component of the rate base;
(5) The Commission erred in arbitrarily establishing a fair rate of return.

I.
On November 2, 1979, South Hinds Water Company filed its petition with the Mississippi Public Service Commission for approval of an increase in its rates for water service, and for approval to amend its terms and conditions for rendering said water service to customers in its certificated area. The primary change requested by the utility in this petition was an increase in the minimum monthly charge for service from $8.00 per month to $12.00 per month. Notice of the filing of this petition was provided by publication of a legal notice in a Jackson newspaper.
Thereafter, a hearing was held before the Commission concerning these matters on January 29, 1980. At the hearing, no one appeared to protest or object to the proposed changes in rates. Upon conclusion of the utility's presentation of its evidence and testimony by a Commission witness, the Commission unanimously adopted the appellant utility's requests, and on February 15, 1980, the Commission entered its original order approving the changes sought by South Hinds.
Meanwhile, a number of complaints had allegedly been made to the Commission regarding the new rate increase and service. As a result, the Commission concluded that the case should be reinstated, and scheduled May 8, 1980 as the date of rehearing. This hearing began with testimony from several utility customers as to the poor quality of service received from South Hinds. Both sides also presented expert testimony from certified public accountants. For the most part, they based their conclusions on the subject utility's financial status as indicated by the following financial statements:

 SOUTH HINDS WATER COMPANY, INC.
 UNAUDITED BALANCE SHEETS
 DECEMBER 31, 1979 AND 1978
 ASSETS December 31, 
 Current Assets: 1979 1978 
 Cash $ 6,761 $ 12,891
 Accounts Receivable 597 1,843
 Prepaid Insurance 202 280
 __________ __________
 Total Current Assets $ 7,560 $ 15,014
 __________ __________
 Fixed Assets:
 Land $ 4,000 $ 4,000
 Water Distribution Lines 211,458 211,458
 Meters 4,750 697
 Office Equipment 683 -
 __________ __________
 Total $ 220,891 $ 216,155
 Less: Accumulated Depreciation 44,958 28,243
 __________ __________
 Total Fixed Assets $ 175,933 $ 187,912
 __________ __________
 Other Assets:
 Organization Cost - Net $ 284 $ 444
 Certificate of Public Utilities 1,000 1,000
 __________ __________
 Total Other Assets $ 1,284 $ 1,444
 __________ __________
 Total Assets $ 184,777 $ 204,370
 ========== ==========
*278 LIABILITIES AND CAPITAL
 Current Liabilities:
 Accounts Payable $ 2,252 $ 571
 Note Payable - Mississippi Bank 140,000 166,000
 Note Payable - City of Pearl 5,000 5,000
 Accrued Expenses 6,740 4,936
 Customers' Deposits 13,890 9,600
 __________ __________
 Total Current Liabilities $ 167,882 $ 186,107
 __________ __________
 Long-Term Debt:
 Note Payable - City of Pearl $ 10,000 $ 15,000
 __________ __________
 Capital:
 Common Stock $ 25,000 $ 25,000
 Retained Earnings (18,105) (21,737)
 __________ __________
 Total Capital $ 6,895 $ 3,263
 __________ __________
 Total Liabilities and Capital $ 184,777 $ 204,370
 ========== ==========
 SOUTH HINDS WATER COMPANY, INC.
 UNAUDITED STATEMENTS OF INCOME
 FOR THE YEARS ENDED DECEMBER 31, 1979 AND 1978
 December 31 
 Income: 1979 1978 
 Metered Water Sales $ 64,955 $ 53,386
 Tapping and Connection Fees 11,828 8,544
 Service Charge 175 --
 Interest Income 269 479
 __________ __________
 Total Income $ 77,227 $ 62,409
 __________ __________
 Expenses:
 Accounting and Legal $ 3,979 $ 2,976
 Administrative Salaries 1,867 1,200
 Billing and Collecting Service 4,282 4,641
 Bad Debts 207 405
 Depreciation and Amortization 16,875 16,727
 Interest Expense 19,186 16,821
 Insurance 923 688
 Meter Reading Expense 2,394 1,050
 Office Supplies and Expense 741 85
 Purchase of Water 9,136 8,285
 Repairs and Maintenance 9,071 5,669
 Tapping and Connection Expense 4,699 6,490
 Taxes 124 116
 Miscellaneous Expense 111 --
 __________ __________
 Total Expenses $ 73,595 $ 65,153
 __________ __________
 Net Income (Loss) $ 3,632 $( 2,744)
 ========== ==========

*279 The Commission's expert witness, Donald C. Weiss, introduced a pro forma statement of income for a twelve month period beginning with the date of the changed rates as follows:

 SOUTH HINDS WATER COMPANY
 PRO FORMA STATEMENT OF INCOME
 FOR A TWELVE MONTH PERIOD BEGINNING WITH
 DATE OF CHANGED RATES
 Adjusted
 Twelve Adjustment to
 Month Revenue to Pro Forma
 Period Reflect Rate Twelve Month
 Schedule A-1 Increase (1) Period
 OPERATING REVENUES
 Metered water sales $ 69,671 $ 30,862 $ 100,533
 Tapping & conn. fees 6,728 6,728
 _________ _________ _________
 76,399 30,862 107,261
 _________ _________ _________
 OPERATING EXPENSES
 Purchased water 9,860 ..... 9,860
 Operation & maint. exp. 22,035 22,035
 Depreciation 16,938 16,938
 Taxes other than inc. 463 463
 Income taxes
 _________ _________ _________
 49,296 ..... 49,296
 _________ _________ _________
 UTILITY OPERATING INCOME 27,103 30,862 57,965
 _________ _________ _________
 FINANCIAL REVENUE AND EXPENSE
 Interest inc. & serv. chgs. 444 ..... 444
 Int. exp. on indebtedness (18,488) (18,488)
 Int. exp. on cust. deposits (833) (833)
 _________ _________ _________
 (18,877) ..... (18,877)
 _________ _________ _________
 NET INCOME $ 8,226 $ 30,862 $ 39,088
 ========= ========= =========

Harold D. Boleware testified on behalf of South Hinds, and he introduced a comparable pro forma statement of income for a twelve month period beginning with the effective date of the rate change as follows:

 SOUTH HINDS WATER COMPANY, INC.
 PRO FORMA OPERATING STATEMENT OF ESTIMATED REVENUES
 AND EXPENSES FOR TWELVE MONTH PERIOD BEGINNING
 WITH EFFECTIVE DATE OF CHANGED RATES
 Without With
 Proposed Proposed
 Rate Rate
 OPERATING REVENUES Change Change 
 Metered water sales to general customers $ 64,700 $ 94,800
 _________ ___________
 OPERATING EXPENSES
 Direct Expenses
 Depreciation on water plant $ 16,670 $ 16,670
 Repairs and maintenance of water plant 12,223 12,223
 Purchase of water 8,937 8,937
 _________ ___________
 Total direct expenses $ 37,830 $ 37,830
 _________ ___________
*280 SOUTH HINDS WATER COMPANY, INC.
 PRO FORMA OPERATING STATEMENT OF ESTIMATED REVENUES
 AND EXPENSES FOR TWELVE MONTH PERIOD BEGINNING
 WITH EFFECTIVE DATE OF CHANGED RATES
 Without With
 Proposed Proposed
 Rate Rate
 Change Change 
 Indirect expenses
 Amortization or organization expense $ 159 $ 159
 Accounting and legal 4,464 4,464
 Administrative salaries 13,520 13,520
 Billing and collecting service 6,455 6,455
 Insurance 910 910
 Loss on uncollectible accounts 97 97
 Meter reading expense 3,175 3,175
 Office supplies and expense 529 529
 Telephone 720 720
 Taxes - other than income 1,841 1,841
 Rent 1,200 1,200
 _________ ___________
 Total indirect expenses $ 33,070 $ 33,070
 _________ ___________
 Total operating expenses $ 70,900 $ 70,900
 _________ ___________
 Operating profit (loss) $( 6,200) $ 23,900
 _________ ___________
 FINANCIAL EXPENSE
 Interest on indebtedness $ 16,020 $ 16,020
 Interest on meter deposits 644 644
 _________ ___________
 Total financial expense $ 16,664 $ 16,664
 _________ ___________
 Net income (loss) $(22,864) $ 7,236
 ========= ===========

One assignment of error involving a distinction between Boleware's pro forma statement of income and that introduced by Weiss was the failure by Weiss to include a substantial amount of authorized salaries for officers, with a corresponding credit for payroll taxes on such salaries. Weiss testified that he included an amount of $1200 for administrative salaries, whereas Boleware included $13,520.
Mr. Weiss also presented a "rate base" computation and a "return on rate base" computation as follows:

 RATE BASE
 APPLICABLE TO PERIOD OF APPLIED PROPOSED
 RATES AND PRO FORMA ADJUSTMENTS
 PLANT IN SERVICE
 Water distribution lines and meters $320,708
 Less: Contributions in aid of construction 104,500
 ________
 $216,208
 Office equipment 683
 ________
 261,891
 Less: Accumulated depreciation:
 December 31, 1979 49,958
 Additions to March 31, 1980 4,231 54,189
 ________ ________
 162,702
 WORKING CAPITAL REQUIREMENT 2,754
 ________
 RATE BASE $165,456
 ========
*281 RETURN ON RATE BASE
 Present Proposed
 Rates Rates
 RATE BASE $165,456 $165,456
 ======== ========
 PRO FORMA UTILITY OPERATING INCOME $ 27,103 $ 57,965
 ======== ========
 RETURN ON RATE BASE 16.38% 35.03%
 ====== ======

The two accountants had several disagreements on the above two statements, and these disagreements constitute a major basis of South Hinds' appeal. Mr. Weiss left out the fixed asset of land in the amount of $4,000 on his rate base computation. In addition, he admitted at the hearing that he deducted $5,000 too much for depreciation in the rate base computation. He also did not consider the interest owed on the long-term debt and customers' deposits, nor the alleged salary expense in arriving at the working capital component of the rate base computation. He also failed to include these amounts in arriving at net operating income. These differences, of course, had a substantial effect on the "rate base" and "return on rate base" calculations, if improperly omitted.
At the conclusion of this rehearing, the Commission apparently accepted all of Mr. Weiss's testimony and computations as accurate and therefore rescinded the prior approval of South Hinds' rate increase by an order dated May 15, 1980. On appeal to the Chancery Court of the First Judicial District of Hinds County, the Commission's decision was affirmed.

II.
There are three essential elements in the rate making process: First, the necessary operating expenses incurred to produce the utility's products; second, the rate base; and third, the rate of return allowed the utility. F. Welch, Cases and Text on Public Utility Regulation 453-54 (rev. ed. 1968). The rate base is calculated by valuing the property used and useful for public service. Then, a fair and reasonable rate of return is allowed on the value of the property included in the rate base, plus an allowance for the necessary operating expenses. In other words, a utility is given revenues in excess of its operating expenses so that it can pay a fair return to its investors and retire its indebtedness.
Under our statutory framework, the Mississippi Public Service Commission is charged with the responsibility of regulating the business and property of intrastate public utilities. Miss. Code Ann. § 77-3-5 (1972). Thus, rate making is a legislative function which has been delegated to the Commission. United Gas Corporation v. Mississippi Public Service Commission, 240 Miss. 405, 127 So.2d 404 (1961). The Commission, with its expertise, is the trier of facts in a rate case, and it determines the reliability of estimates, the credibility of witnesses, and the weight of evidence. Mississippi Public Service Commission v. Mississippi Power Company, 337 So.2d 936 (Miss. 1976); Southern Bell T. & T. Co. v. Mississippi Public Service Commission, 237 Miss. 157, 113 So.2d 622 (1959).
Our courts have only limited review of the rates prescribed for a utility by the Commission. Such orders may not be set aside on appeal unless the court finds that the Commission's order contains errors of law, or is contrary to the manifest weight of the evidence, or is not supported by substantial evidence. Miss. Code Ann. § 77-3-67 (Supp. 1982); Bay Springs Telephone Company, Inc. v. Mississippi Public Service Commission, 370 So.2d 694 (Miss. 1979); Mississippi Public Service Commission v. Mississippi Valley Gas Company, 358 So.2d 418 (Miss. 1978).

IIIA.
In the instant case, the appellant's first contention is that the Commission *282 erred in failing to include authorized but unpaid officers' salaries as a legitimate operating expense. Officers' salaries are traditionally recognized as an operating expense. 64 Am.Jur.2d Public Utilities § 173 (1972); 73 C.J.S. Public Utilities § 25(2) (1951). And, there is no requirement that such expenses be actually paid. Investors who are also officers should be paid a reasonable compensation for management and operating services, and they are not required to donate such services to the customers of the utility. In such cases, the burden of proof is upon the owners of the utility to show that the services rendered are reasonably worth the compensation authorized for payment. The Commission, in turn, should carefully scrutinize the compensation to be paid, and among several factors, should consider the amount and quality of work performed by the officers in question. Mississippi Public Service Commission v. Home Telephone Company, Inc., 236 Miss. 444, 110 So.2d 618 (1959).
We conclude that the Commission was in error for rejecting this item as an operating expense. Witnesses for South Hinds testified that the payments of these salaries were authorized according to the minutes of directors' meetings, but that these expenses remained unpaid for lack of funds. The utility employed only one full-time employee who handled mailing and customer complaints. The three stockholders who are unpaid were on the board of directors; they formulated policy, and they gave directions to the full-time and part-time personnel for operation of the plant. Under these circumstances, it does not seem unreasonable for the three stockholder-officers to draw a total sum of $13,520 annual salary for their duties. Thus, it was error for the Commission to exclude these expenses simply because they had not been actually paid. Consequently, it was also error to exclude the payroll taxes on the salaries.

IIIB.
The appellant also contends that the Commission erred in excluding interest expense owed on customers' deposits and on notes payable as operating expenses. For the most part, other jurisdictions follow the rule that interest paid on customers' deposits should be deducted as an operating expense if the deposits were subtracted from the utility's rate base. See, e.g. Re Missouri Public Service Company, 25 PUR 4th 24 (1978) (proper to reflect such cost as operating expense by multiplying the amount the rate base is reduced by the interest rate on such deposits); Re Davenport Water Company, 76 PUR 3d 209 (1968) (5% interest paid by a water company on customers' deposits was not included in operating expenses where the deposits were included in the rate base). Some jurisdictions take into account customers' deposits bearing interest as a part of the capital structure when determining a proper rate of return. Re Consolidated Edison Company of New York, Inc., 41 PUR 3d 305 (1961) (customer deposits on which interest is paid should be treated in same manner as funds obtained through issuance of bonds and stock). But, utilities are not given credit for such an expense in both operating expenses and in the rate of return analysis since that could permit a double recovery. In the instant case, the Commission did not subtract deposits from the rate base, and, therefore, properly declined to include interest on such deposits as an operating expense.
With regard to the question concerning interest expense owed on the utility's long-term debt, a review of the law applied by other jurisdictions also indicates a strong rejection of including interest on other indebtedness, such as notes payable, as an operating expense. See, e.g. Re Gas Company of Vermont, Inc., 26 PUR 4th 155 (1978) (standard in utility regulation that interest expense is a below the line item); Re Cheshire Water Company, 100 PUR (NS) 244 (1953) (interest and dividends are not proper items to be charged to operating expense); Ex Parte Westside Transit Lines, 91 PUR (NS) 56 (1951) (interest on borrowed capital cannot be regarded as a proper operating expense for rate making purposes); 64 Am.Jur.2d Public Utilities § 185 *283 (1972) (interest charges on borrowed capital are not allowed as operating expenses but must be considered in determining a fair rate of return). This rejection is based on the attitude that interest expense is analogous to dividends. See Ex Parte Breaux Bridge Teleph. Company, 25 PUR 3d 82 (1955) (interest is a payment for the use of borrowed capital just as dividends are payments for the use of equity capital. In other words, neither interest on indebtedness nor dividends should be regarded as operating expenses to be paid by the customers. Rather, cost of debt is included in the capital structure to arrive at a fair rate of return. We conclude that this rule is sound in theory, and therefore, affirm the Commission's ruling to exclude interest owed on notes payable as an operating expense.

IIIC.
The appellant's third contention is that the Commission erred in failing to include a four-acre tract of land as a part of the rate base. A public utility company is entitled to a fair return only upon the value of such of its property as is useful and being used in service for the customers' benefit. 1 A. Priest, Principles of Public Utility Regulation 174 (1969); 73 C.J.S. Public Utilities § 18 (1951). Otherwise, the resulting rates would impose on customers the burden of paying for something from which they receive no benefit.
It should be recognized, however, that property is not necessarily used and useful only when it is currently being used to produce the utility's product. Time lag and costs associated with development must be considered so that utilities are encouraged to maintain and increase adequate service to the public. Thus, if the property will be employed within a reasonable time, and if the utility's management can show a definite plan as to how the property will be employed for public service, then the property's value may be included in the rate base. See Welch, supra at 363-66 (discussion of types of property used and useful). The land in question was a couple of vacant lots in south Jackson, and there was no evidence produced as to when the land would be placed into public service, nor was there any precise indication of a proposed use. In the absence of such evidence, it was proper to exclude the value of the land from the rate base total.

IIID.
The appellant also claims that the Commission made several errors with regard to calculating the working capital component of the rate base. Working capital represents the amount of cash, materials, and supplies ordinarily required by a utility in its day-to-day business operation to meet current expenses and such contingencies as may typically develop. Preparing For The Utility Rate Case 195 (F. Welch ed. 1954). It is customary to include an allowance for working capital in the rate base, since cash working capital, like fixed assets, represents invested capital for which the owners should gain some return.
In the case sub judice, the appellant's counsel argued that the salaries expense and the interest expense should have been included in the working capital component. Since the officers' salaries and payroll taxes should have been regarded as legitimate operating expenditures, these amounts should have also been included in the working capital component. See J. Barnes, The Economics of Public Utility Regulation 495-99 (1942) (discussion of expenses to be included in working capital such as salaries and wages).

IIIE.
The appellant's final contention is that the Commission arbitrarily set a rate of return without considering the rate necessary to cover all expenses. In Southern Bell Telephone and Telegraph Company v. Mississippi Public Service Commission, 237 Miss. 157, 113 So.2d 622 (1959), our Court noted the importance of fixing a rate which would not only provide for operating expenses, but would also sustain the capital costs of the utility such as service on the *284 debt and dividends on the stock. Indeed, a fair return implies one which will enable a utility to gain enough profit to pay its interest requirements. In the case under consideration, neither the Commission's order, nor its arguments on appeal, shed any light on its findings as to cost of equity, the cost of indebtedness, or the weighted cost of capital. Furthermore, it is readily apparent that the utility, under its current rates, cannot pay the omitted officers' salaries and the interest expense on its $140,000 loan. Since the Commission has wholly failed to show any reason as to how it determined that the current rate of return was fair and reasonable, it must be concluded that the Commission has committed error by arbitrarily setting the utility's rate of return.

V.
Since the Commission's order dated May 15, 1980, is based on errors of law and insubstantial evidence, we must reverse the order as confiscatory. Thus, the prior order dated February 15, 1980, is in full force and effect and thereby, providing for the rate increase requested by South Hinds. Said order shall stand until such a time when substantial evidence is available which indicates that the new rate structure is unreasonable or that a more equitable rate structure is available. Finally, questions concerning service complaints were not raised on appeal, and they are therefore not addressed by this opinion.
REVERSED AND RENDERED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, HAWKINS and BOWLING, JJ., concur.
DAN M. LEE, J., takes no part.