# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-UR-00803-SCT

*RANKIN COUNTY, MISSISSIPPI*

*v.*

*MISSISSIPPI PUBLIC SERVICE COMMISSION*
*AND ENTERGY MISSISSIPPI, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/12/2022 |
| TRIAL COURT ATTORNEYS: | JEREMY CHARLES VANDERLOO |
| | TIANNA HILL RABY |
| | ALEXANDER CASTON MARTIN, II |
| | ALICIA SCHERINI HALL |
| | EMILY WILKINS KRUGER |
| | CORBIN ROSS HAMMONS |
| | ALICIA SCHERINI HALL |
| | MICHAEL JEFFREY WOLF |
| ATTORNEY FOR APPELLANT: | MICHAEL JEFFREY WOLF |
| ATTORNEYS FOR APPELLEES: | WILSON DOUGLAS MINOR |
| | TIANNA HILL RABY |
| | ALICIA SCHERINI HALL |
| | MICHAEL CASEY WILLIAMS |
| | STEPHEN FRIEDRICH SCHELVER |
| | MICHAEL JAMES BENTLEY |
| | RANKIN SUMNER FORTENBERRY |
| | MOLLY M. WALKER |
| NATURE OF THE CASE: | CIVIL - UTILITY RATE |
| DISPOSITION: | AFFIRMED - 09/26/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. On July 12, 2022, the Mississippi Public Service Commission (the Commission)

entered an order authorizing a rate increase for Entergy Mississippi, LLC (Entergy), an

electric utility company. The order adopted the recommendations of a joint stipulation filed by Entergy and the Mississippi Public Utilities Staff (the Staff) following verification of Entergy's annual financial data pursuant to its Formula Rate Plan. Rankin County had intervened in the proceedings in its capacity as an Entergy customer, disputing the Commission's application of the formula used for calculating rate adjustments and in particular objecting to the exclusion of unbilled revenue from Entergy's operating expenses. On appeal, we find that the Commission's order is supported by substantial evidence and is not arbitrary or capricious. The issues Rankin County raises for the first time on appeal are deemed waived.

**FACTS AND PROCEDURAL BACKGROUND**

¶2.    The Mississippi Legislature has delegated to the Commission "exclusive original jurisdiction over the intrastate business and property of public utilities[.]" Miss. Code Ann. § 77-3-5 (Rev. 2018). In this regulatory role, the Commission has exclusive rate-making authority. No rate set by the Commission "shall exceed that which is just and reasonable." Miss. Code Ann. § 77-3-33(1) (Rev. 2018). Rates must "yield a fair rate of return to the utility furnishing service, upon the reasonable value of the property of the utility used or useful in furnishing service." *Id.*

¶3.    Utilities are authorized to request a rate adjustment by filing a notice of intent with the Commission and the Staff.[1] Miss. Code Ann. § 77-3-37(1) (Rev. 2018). A public hearing

---

[1] The Staff is an independent state agency "established by the Mississippi Legislature to investigate utility filings." *Total Env't Sols., Inc. v. Miss. Pub. Serv. Comm'n*, 988 So. 2d 372, 373 (Miss. 2008); Miss. Code Ann. § 77-2-3(3) (Rev. 2018) ("The primary functions of the public utilities staff shall be investigative and advisory in nature."); *see also*

is required for a rate change that would increase the utility's annual revenues by more than $100,000 or two percent (whichever is higher). Miss. Code Ann. § 77-3-39(1) (Rev. 2018).

¶4.     The Legislature has authorized the Commission to "adopt a formula type rate of return evaluation rate[.]" Miss. Code Ann. § 77-3-2(3)(a)(i) (Rev. 2018). Formula rate plans may "[p]eriodically review and adjust, if required, the utility's level of revenues based upon the actual books and records of the utility which are periodically the subject of independent audits and regulatory audits[.]" *Id.*[2] "Each periodic evaluation shall be supported with a sworn filing by the utility incorporating the data specified in the formula rate adopted by the commission, and such data shall be verified by the commission[.]" Miss. Code Ann. § 77-3-2(3)(c)(i) (Rev. 2018).

¶5.     Entergy is an electric utility company regulated by such a formula rate plan. Currently, Entergy's periodic rate adjustments are governed by Formula Rate Plan Rider Schedule FRP-7 (second revised) (the Formula Rate Plan). Applying financial data provided annually by Entergy and verified by the Commission and the Staff, the Formula Rate Plan is used to determine whether the rates charged by the utility should stay the same, increase, or decrease. The rate adjustment calculated to recover a change in revenues for the upcoming year is known as the Annual Rate Adjustment. In a separate, retrospective calculation, the Formula Rate Plan is used to determine whether the utility's returns for the past year were within an

Miss. Code Ann. § 77-2-9(3) (Rev. 2018) (enumerating responsibilities of the Staff).

[2] In contrast to less frequent general rate proceedings, formula rate plans gradually phase in rate adjustments.

appropriate range, were too low, or were too high. If the past year's returns were too low or too high, a temporary rate adjustment is warranted to change the past year's revenues. This is known as the Interim Rate Adjustment.

¶6.     Every March, Entergy files a prospective "Evaluation Report" (used to calculate the Annual Rate Adjustment) and a retrospective "Look Back Report" (used to calculate the Interim Rate Adjustment). Consistent with the directive that rates must "yield a fair rate of return to the utility furnishing service, upon the reasonable value of the property of the utility used or useful in furnishing service," the appropriate rate of return is calculated by measuring the utility's revenues against its rate base.[3] § 77-3-33(1). If Entergy's Earned Rate of Return on Rate Base[4] falls within a bandwidth set around a Benchmark Rate of Return on Rate Base,[5] no rate adjustment is warranted. However, if the Earned Rate of Return on Rate Base is below or above the bandwidth, an adjustment to the rates is warranted to bring the utility's revenues to an appropriate rate of return. When application of the formula results in an

---

[3] The rate base includes the value of the utility's property used or useful in furnishing the utility service. *See **S. Hinds Water Co. v. Miss. Pub. Serv. Comm'n***, 422 So. 2d 275, 281 (Miss. 1982).

[4] The Formula Rate Plan defines the Earned Rate of Return on Base Rate as "the Company's net utility operating income divided by its rate base" and contains a formula for determining this component.

[5] The Formula Rate Plan defines the Benchmark Rate of Return on Rate Base as "the composite weighted embedded cost of capital reflecting the Company's annualized costs of Long-Term Debt, Quarterly Income Preferred Securities . . . and Preferred Equity at the end of the Evaluation Period together with the Evaluation Period Cost Rate of Common Equity . . ." and contains a formula for determining this component. The bandwith set around the Benchmark Rate of Return on Rate Base has an upper limit of the Benchmark Rate plus 0.50 percent and a lower range of the Benchmark rate minus 0.50 percent.

increase in revenues for the utility, those revenues are subject to a 4 percent cap on unadjusted revenues for the relevant evaluation period.

¶7. The financial data in the annual reports are verified independently by the Staff. Entergy provides the Staff with all required confidential data and records. The Commission and the Staff are entitled to "have access to and the right to inspect and examine all accounts, records, memoranda, and property of the public utilities." Miss. Code Ann. § 77-3-79 (Rev. 2018). However, utilities have the right to protect "trade secrets or confidential commercial or financial information" from public disclosure. Miss. Code Ann. § 79-23-1(2) (Rev. 2013). Commission Rule 109(6)(c) provides that "information related to . . . rates regulated by the Commission shall be presumed to be accessible public records." But a utility can seek a confidential designation by providing "the legal and factual basis for its assertion that the information qualifies as either confidential or a trade secret pursuant to Mississippi law and shall state why the information cannot be reasonably redacted and filed publicly." Commission Rule 109(8)(b).[6]

¶8. Entergy filed the instant Evaluation Report and Look Back Report in March 2022. On June 2, 2022, Entergy and the Staff submitted a joint stipulation to the Commission presenting the change in revenues and corresponding net rate adjustments to customer billing[7] as calculated under the terms of the Formula Rate Plan. As approved in the Commission's final order, Entergy's March 2022 prospective Evaluation Report resulted in

---

[6] https://www.psc.ms.gov/sites/default/files/Documents/ProceduralRules.pdf

[7] For residential customers, the net rate adjustments resulted in an increase of $3.13 per month per 1,000 kilowatt hours (as calculated for a twelve-month billing cycle).

a change in revenues as follows:[8]

| | |
|---|---|
| Rate Base | $3,949,547,994 |
| Earned Rate of Return on Rate Base (ERORB) | 5.15% |
| Benchmark Rate of Return on Rate Base (BRORB) | 6.71% |
| Range of No Change | 6.21% to 7.21% |
| Point of Adjustment | 6.48% |
| Change in Revenues | $71,008,322 |
| Maximum Change in Revenues for the 2022 Evaluation Report, as permitted by FRP-7 (4% of unadjusted Evaluation Period Revenue) | $48,606,128 |
| **Total Change in Revenues** | **$48,606,128** |

Entergy's anticipated Earned Rate of Return on the Base Rate was below the lower end of the bandwidth, triggering an increase in revenue of approximately $70 million. However, application of the Formula Rate Plan's 4 percent cap reduced the permissible recoverable revenues to $48,606,128. The Commission approved a corresponding Annual Rate Adjustment calculated to recover the $48,606,128 change in revenue.

¶9.    As approved in the Commission's final order, Entergy's March 2022 Look Back Report resulted in a change in revenues as follows:

| | |
|---|---|
| Rate Base | $3,614,832,397.00 |
| Earned Rate of Return on Rate Base (ERORB) | 5.99% |
| Benchmark Rate of Return on Rate Base (BRORB) | 6.85% |
| Range of No Change | 6.35% to 7.35% |
| Point of Adjustment | 6.69% |
| Change in Revenues | $34,138,394.00 |
| DSM True-up | $124,439.00 |
| **Total Change in Revenues** | **$34,262,832.00** |

---

[8] Prior to entering into the joint stipulation, the Staff disputed aspects of the March 2022 annual reports, including the inclusion of certain operating and maintenance expenses. Entergy revised its data in response to the Staff's verification process.

Entergy's Earned Rate of Return on Rate Base for the Look Back period was below the lower end of the bandwidth, triggering an increase in recoverable revenues. The Commission approved a corresponding Interim Rate Adjustment calculated to recover the $34,262,832 change in revenues.

¶10.    Rankin County moved to intervene in the proceedings on March 29, 2022. The Commission held a public hearing on June 7, 2022, in which Rankin County participated, cross-examining Entergy's witnesses on the rate calculation process and in particular on the practice of excluding unbilled revenue from operating income. In a pretrial order, the Commission authorized Rankin County to provide prefiled testimony and evidence to support its opposition to the rate adjustments, but the county ultimately did not offer admissible testimony or evidence.

¶11.    The Commission entered an order on July 12, 2022, approving the rate changes. The joint stipulation originally calculated the net rate adjustments to span a twelve-month billing cycle beginning in July 2022. However, when the Commission had not entered its final order by the start of the July 2022 billing period, Entergy submitted supplemental testimony with updated net rate adjustments to account for an eleven-month billing cycle beginning in August 2022. The sworn supplemental testimony represented that the methodology for determining the revisions was consistent with both the Formula Rate Plan and the Joint Stipulation. The Commission adopted the updated eleven-month rate adjustments into its final order without additional public notice or a hearing.

¶12.    Rankin County did not file a petition for rehearing with the Commission as permitted

by Mississippi Code Section 77-7-293 (Rev. 2018) but appealed directly to this Court. This Court retained jurisdiction of the case pursuant to Mississippi Code Section 77-3-72 (Rev. 2018).[9]

## STANDARD OF REVIEW

¶13. This Court's standard of review over decisions of the Public Service Commission provides that "[t]he order shall not be vacated or set aside either in whole or in part, except for errors of law, unless the court finds that the order of the commission is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the commission, or violates constitutional rights." Miss. Code. Ann. § 77-3-72(4) (Rev. 2018); *Miss. Pub. Serv. Comm'n v. S. Cent. Bell Tel. Co.*, 464 So. 2d 1133, 1135 (Miss. 1984). "[T]he findings of the public service commission are *prima facie* correct and as a reviewing court, we will not substitute our judgment for the judgment of the commission." *Id.*; *State ex rel. Pittman v. Miss. Pub. Serv. Comm'n*, 538 So. 2d 387, 394 (Miss. 1989). "While broad authority and discretion has been promulgated in favor of the Commission that power is not unbridled and the rules and regulations which it has promulgated to aid in the fulfillment of its duties under the chapter must not be utilized in an arbitrary or capricious manner[.]" *Miss. Power Co. v. Miss. Pub. Serv. Comm'n*, 168 So. 3d 905, 910 (Miss. 2015) (quoting *State ex rel. Pitman v. Miss. Pub. Serv. Comm'n*, 520

---

[9]Article 6, section 146, of the Mississippi Constitution, provides that "[t]he Legislature may by general law provide for the Supreme Court to have original and appellate jurisdiction as to any appeal directly from an administrative agency charged by law with the responsibility for approval or disapproval of rates sought to be charged the public by any public utility." *See also* M.R.A.P. 19.

8

So. 2d 1355, 1357-58 (Miss. 1987)).

**DISCUSSION**

¶14.    The Legislature regulates utilities with the policy to "provide fair regulation of public utilities in the interest of the public," and to "promote adequate, reliable and economical service to all citizens and residents of the state[.]" Miss. Code Ann. § 77-3-2(1)(a), (c) (Rev. 2018). No rate set by the Commission "shall exceed that which is just and reasonable." § 77-3-33(1); *see also **S. Hinds Water Co.***, 422 So. 2d at 281. The Legislature has delegated its regulatory authority to the Commission, and "the functions of the commission, with the aid and assistance of its staff, shall be regulatory and quasi-judicial in nature." Miss. Code Ann. § 77-2-3(2) (Rev. 2018).

I.    **Whether the Commission exceeded its authority by permitting "unbilled revenue" to be excluded from Entergy's operating income.**

¶15.    Rankin County argues that the Commission should not allow Entergy to exclude unbilled revenue from its operating income. Unbilled revenue is estimated revenue that has not been billed to or collected from customers. Under Entergy's accounting practices, its December unbilled revenue estimates are categorized as either a credit or debit depending on how the balance relates to the prior December's unbilled revenue estimates.[10] If the prior year's unbilled estimate is greater than the current year's estimate, the end-of-year balance in the unbilled revenue account is treated as a debit, decreasing Entergy's operating income. However, if the prior December's unbilled revenue estimate is less than the current

_____

[10] The unbilled revenue account is reflected as a line item in Entergy's year-end balance sheet.

9

December's unbilled revenue estimate, then the end-of-year balance of the unbilled revenue account is treated as a credit, increasing Entergy's operating income.

¶16.    The Formula Rate Plan does not mandate how unbilled revenue should be accounted. Since 2016, the Commission has permitted Entergy to exclude unbilled revenue estimates from its operating income calculation.[11] The Commission accepted Entergy's rationale that this approach would result in the use of twelve months of actual usage data to measure revenues.[12] In the instant Formula Rate Plan proceedings, the exclusion of Entergy's unbilled revenue from its operating income had the effect of increasing Entergy's operating income by $2.6 million because the unbilled revenue account had been classified as a debit when related to the previous December's account balance. Therefore, excluding the unbilled revenue from Entergy's operating income did not benefit Entergy in these rate proceedings in that it did not contribute to the positive change in revenue approved by the Commission.

¶17.    Rankin County argues that, in a year in which the unbilled revenue account is classified as a credit, the exclusion of the account from Entergy's operating income conceivably could increase rates in what amounts to an improper double-billing of customers. It argues that Entergy should be required to treat unbilled revenue as ordinary income. In compliance with federal law, unbilled revenue is treated as ordinary income by Entergy for purposes of federal taxation. *See* I.R.C. § 451. Entergy argues that companies routinely and

---

[11] *See* 2014-UN-132 (Miss. P.S.C. June 17, 2016).

[12] Entergy argued that December is an unpredictable month for weather and power usage and that using unbilled estimates could result in dramatic fluctuations in operating revenues.

appropriately use different accounting methods for tax purposes versus other purposes. It argues that the United States Tax Court has noted that utilities may treat unbilled revenue differently for ratemaking purposes. *See Orange & Rockland Utils., Inc., v. Comm'r of Internal Revenue*, 86 T.C. 199, 206 (1986); *see also MidAm. Energy Co. v. Comm'r of Internal Revenue*, 114 T.C. 570 (2000).

¶18.    Entergy argues that the Commission's treatment of unbilled revenue is consistent with its precedent. "[A]n agency must either conform to its prior norms and decision or explain the reason for its departure from such precedent." *Methodist Specialty Care Ctr. v. Miss. Div. of Medicaid*, 305 So. 3d 1098 (Miss. 2020) (quoting *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 609 (Miss. 2009), *abrogated on other grounds by King v. Miss. Mil. Dep't*, 245 So. 3d 404 (Miss. 2018). Additionally, this Court defers to the Commission's determinations of net income components when the decisions are based on substantial evidence. *See United Gas Corp. v. Miss. Pub. Serv. Comm'n*, 127 So. 2d 404, 428-29 (Miss. 1961); *see also  S.E. Miss. Legal Servs. Corp. v. Miss. Power Co.*, 605 So. 2d 796, 798 (Miss. 1992) ("[t]he component parts of the utility's rate base calculations come under our eye only as they push the end result in excess of that which is just and reasonable.")

¶19.    We find that Rankin County has not shown how the Commission's approval of Entergy's practice of excluding unbilled revenue from its operating income is an arbitrary approach unsupported by substantial evidence or resulting in unfair or unjust rates. It is a reasonable approach within the Commission's regulatory discretion to measure Entergy's

revenue from twelve months of actual usage data rather than incorporating unbilled revenue estimates. The approach is not designed to unfairly manipulate rates, as evidenced in these proceedings by the circumstance that the exclusion of the unbilled revenue increased Entergy's operating income due to the unbilled revenue estimates' classification as a debit.

## II. Issues Raised by Rankin County for the First Time on Appeal

¶20. On appeal, Rankin County raises numerous issues for the first time. It challenges: (1) the absence of a public hearing on the recalculation of the net rate adjustments to account for an eleven month billing period, (2) the application of the Formula Rate Plan's 4 percent cap on revenue increases, and (3) the Commission's designation of and management of Entergy's confidential records.

¶21. Entergy and the Commission urge us to find that these arguments have been waived given that none of these issues was presented to the Commission for consideration at any time during the proceedings or on a motion for rehearing as permitted by Section 77-7-293. Federal jurisdictions apply the administrative waiver rule, and it is applied by federal courts to the Mississippi Public Service Commission. *See **Dixie-Net Commc'ns, Inc. v. BellS. Telecomms., Inc.***, 915 F. Supp. 2d 784, 789 (N.D. Miss. 2012) ("Failing to raise an issue at the administrative level waives the right to appellate review of the issue.") (citing ***Sw. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.***, 208 F.3d 475, 487 (5th Cir. 2000)); *see also **United States v. L.A. Tucker Truck Lines, Inc.***, 344 U.S. 33, 37, 73 S. Ct. 67, 97 L. Ed. 54 (1952); ***Int'l Tel. & Tel. Corp. v. United Tel. Co. of Fla.***, 550 F.2d 287, 289 (5th Cir. 1977).

¶22. However, "[a] court might undertake review of such a question in exceptional

circumstances." ***AT&T Corp. v. Miss. Dep't of Info.***, 298 So. 3d 938, 953 (Miss. 2020) (citing ***Myran v. Martin***, 670 F.2d 49, 51 (5th Cir. 1982)). While applying the general rule, we have held that:

> [w]e reserve the right to consider an issue that was not raised before an administrative agency where . . . the facts are undisputed and the issue is one that would allow an erroneous application of a statute, and where failure to address such issue will result in a possible deprivation of substantive rights.

***Id.*** (alterations in original) (quoting ***Dean v. Pub. Emps.' Ret. Sys.***, 797 So. 2d 830, 837 (Miss. 2000)).

¶23. The issues at hand do not warrant an exception to our general waiver principles, and, regardless, they are without merit. Rankin County does not argue that the net rate adjustments were miscalculated when they were adjusted to span an eleven-month billing cycle instead of a twelve-month billing cycle. The change in revenues, vetted thoroughly in the public proceedings before the Commission, remained unchanged.

¶24. Rankin County argues that the terms of the Formula Rate Plan should be construed to apply a single 4 percent cap on revenue collectively to both annual reports. This challenge to a specific component of the Formula Rate Plan should not be made for the first time on appellate review of these regulatory proceedings. In its capacity as intervener, Rankin County was granted full opportunity to raise such a challenge in the proceedings below, and it was authorized to present evidence and testimony to the Commission to support its objection to the rate increase. Regardless, the Commission, the Staff, and Entergy properly have construed the plain language of the Formula Rate Plan to apply two separate 4 percent caps

on revenues, one under the Evaluation Report and one under the Look Back Report.[13]

¶25. Finally, Rankin County has not shown how the Commission's designation or management of Entergy's confidential information constitute grounds for reversing the Commission's order. Rankin County appears correct in its assertion that Entergy designated certain records as confidential without complying strictly with Commission Rule 109(8)(b)'s requirement to articulate the basis for why that designation is required. However, Rankin County does not dispute that the materials did, in fact, warrant a confidential designation, and has had full access to the sealed, confidential records in preparation for this appeal. It did not raise a challenge related to its access to Entergy's confidential material during the proceedings below and has presented no argument on appeal to support that the Commission's management of Entergy's confidential information resulted in unfair or unjust rates.

**CONCLUSION**

¶26. The Commission, the Staff, and Entergy complied with the statutory and regulatory procedures for making a utility rate adjustment. Rankin County has not demonstrated how the Commission's application of its adopted Formula Rate Plan regulatory scheme resulted in unfair or unjust rates. The Commission's approval of the net rate adjustments as calculated under the Formula Rate Plan was supported by substantial evidence and was not arbitrary or capricious. Therefore, the Commission's order is affirmed.

---

[13] The Annual Adjustment Rate formula applies a 4 percent cap on the "Evaluation Period Retail Revenues" found in the current, prospective Evaluation Report. But the Interim Rate Adjustment formula is retrospective, relying on the previous year's Evaluation Report's revenues. Therefore, the formulas are applying two separate 4 percent caps.

¶27.   **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**